UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KELLY WARFIELD,<br><br>               Plaintiff,<br><br>      vs.<br><br>JARED (JERRY) HETTICH, TROY PONTO, SAM YOST, ERIC TIMMERMAN, CORY AMBROSE, OFFICER ____ RODRIQUEZ, OFFICER ____ ALLEN, OFFICER ____ JONES, DEREK EKEREN, IAN PACKER, CALEB EVANS, JESS BOYSEN, JANE/JOHN DOE(S), JANE/JOHN DOE(S), TERESSA BITTINGER, KELLIE WASKO, ALONG WITH ALL STAFF, SOUTH DAKOTA DEPARTMENT OF CORRECTIONS, STATE OF SOUTH DAKOTA, WISCONSIN DEPARTMENT OF CORRECTIONS, AND WISCONSIN, ALL IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES,<br><br>               Defendants. | 4:24-CV-04049-ECS<br><br><br>OPINION AND ORDER ON MOTION TO AMEND COMPLAINT, MOTION FOR ORDER TO COMPEL, AND AMENDED MOTION FOR ORDER TO COMPEL AND § 1915A SCREENING ORDER |

Plaintiff Kelly Warfield, an inmate at the South Dakota State Penitentiary (SDSP), filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. Warfield later moved to amend his Complaint. Doc. 3. He has also filed a Motion to Compel, Doc. 4, and a Motion for Order to Compel, Doc. 6. Warfield has paid the full filing fee for a civil case.

## I.      Motion to Amend Complaint

Warfield has moved to amend his Complaint. Doc. 3. District of South Dakota Local Rule 15.1 requires that a party wanting to amend a pleading "must attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or underlined so

that they may be easily identified." D.S.D. LR 15.1. Warfield's motion includes a copy of his proposed amendment, and he clearly describes how the proposed amendment is intended to replace the first page of his original Complaint. See Doc. 3 at 1; Doc. 3-1 at 1. This Court finds that Warfield has substantially complied with Local Rule 15.1. Also, Federal Rule of Civil Procedure 15(a)(1)(A) allows a party to amend a pleading once as a matter of course within 21 days after serving it. Here, the defendants have not yet been served. Thus, Warfield is granted leave to amend his Complaint as a matter of course. This Court will analyze Warfield's claims based on his Complaint, Doc. 1, in light of his amendment to the first page, Doc. 3-1.

## II.   1915A Screening

### A. Factual Allegations in Warfield's Complaint

At the screening stage, the Court takes as true the facts as pleaded in Warfield's Complaint: In the early morning hours of May 11, 2023, Warfield overheard a conversation between Nikole Van Engen, a nurse at SDSP, and an unidentified third party. Doc. 1 ¶ 2. Warfield believes he heard Nurse Van Engen say, "Can he see me . . . I'll never get to see him again." Id. Later, Lt. Hofer[1] appeared at Warfield's cell and instructed him to "cuff up." Id. Lt. Hofer directed an unnamed officer to grab "whatever [Warfield] is working on," which, according to Warfield, was a certificate of service. Id. Lt. Hofer and Officer Rodriquez then escorted Warfield to "ID," placed him in a holding cell, and informed him that he would be transferred out of state. Id. A couple of hours later, Officer Rodriquez, Lt. Hofer, and another prison officer walked Warfield back to his cell. Id. Once there, Warfield observed that all his

---

[1] Warfield does not always provide an individual's full name when referencing them in his Complaint. When a full name is provided, this Court will first reference the individual by their full name and then refer to them by their last name for the remainder of the Opinion and Order. If Warfield does not provide a full name, the Court simply follows suit and refers to the individual by their last name only, as it does here with Lt. Hofer and Officer Rodriquez.

property had been placed into five boxes. Id. After inspecting each box, Warfield noticed that some of his legal documents had been taken out of their envelopes. Id. Over the next couple days, he realized some of his legal documents from his state criminal case were missing. Id. ¶ 3. Warfield explained the legal documents were part of his attempt "to retain experts from HPE to recover overwritten data on [the South Dakota Department of Corrections'] servers in Springfield, South Dakota—Mike Durfee State Prison." Id.

On May 19, 2023,[2] Warfield was transferred to the Dodge Correctional Institution in Waupun, Wisconsin. Id. ¶ 4. Once there, correctional officers took his "[Americans with Disabilities Act] watch, medically ordered arch supports[,] and [thrombo-embolic deterrent] hose." Id. He was not given access to his legal property from South Dakota, he had to seek approval for funding to get legal supplies, and his access to legal research was more restricted than it was while he was incarcerated in South Dakota. Id. ¶ 5.

Warfield is upset with the health care he received while incarcerated in Wisconsin. The Wisconsin Department of Corrections stopped all the medication he had been prescribed in South Dakota. Id. ¶ 6. Without the medication, Warfield began having chest pain, and his legs and feet began to swell. Id. The swelling in his right foot was severe enough that Warfield has scarring from where the swelling ripped his skin apart. Id. He claims that South Dakota purposefully failed to send Wisconsin his health care records to teach him "a lesson about complaining about South Dakota DOC staff and health care." Id. Warfield claims to have filed "various" grievances in Wisconsin, complaining about his health care and legal access. Id.

---

[2] Warfield's Complaint states the date as May 19, 2024. His Complaint inexplicably switches between 2023 and 2024 several times. Given that his Complaint was filed in March 2024, this Court is confident that Warfield meant May 19, 2023, and the reference to 2024 was merely an error.

Although, he later claims that he requested grievance forms but never received them, and if he had, he would have been too scared to file a grievance.  Id.  Between May 19, 2023, through June 19, 2023, Warfield went on a hunger strike as a means to get himself transferred back to South Dakota.  Id.

Around June 29, 2023, Sgt. Oertel, an employee of the Wisconsin Department of Corrections, informed Warfield that he was to be moved to a different unit in preparation for his transfer back to SDSP.  Id. ¶ 7.  Soon after, Lt. Beck and Officer Katze went to Warfield's cell and handcuffed him "in an unusual way that caused [him] pain."  Id.  Warfield reports that Officer Katze used "pressure point [techniques] on his right arm and wrist" that left "visible injury."  Id.  Sgt. Oertel tried to stop Officer Katze from using excessive force, but it was to no avail.  Id.

Warfield was transferred back to SDSP on July 11, 2023.  Id. ¶ 9.  He claims some correctional officers were unhappy with his return and retaliated against him by harassing health care staff that helped treat his various ailments.  Id. ¶¶ 9–11.  He implies that Nurse Van Engen either left or lost her position with SDSP because guards were harassing her for providing Warfield with health care services.  Id. ¶ 11.  As a result, Warfield asserts that some nurses are now "afraid to respond to [his] sick call[s]" or other requests.  Id.

Warfield alleges that on January 11, 2023,[3] Officer Jess Boysen yelled something akin to "Are you F*cking stupid, can't you read" at him.  Id. ¶ 12.  Because SDSP staff member Troy Ponto advised Warfield to immediately report any issues with officers to unit staff, Warfield

---

[3] Again, Warfield appears to have written the wrong year.  Though his Complaint states January 2023, he describes in the next paragraph going on a hunger strike from January 11, 2023, to March 23, 2024.  Based on the chronology of events outlined in his Complaint, it would make sense that Warfield meant January 2024.  Also, he claims his hunger strike lasted until March 23, 2024, but the Complaint was filed on March 13, 2024—ten days before his hunger strike supposedly ended.

went to Derek Ekeren's office to report the incident.  Id.  But Ekeren was not there.  On the way back to his cell, Warfield ran into Officer Boysen.  Id.  When Warfield told Officer Boysen where he had been, Officer Boysen "palmed punch/pushed" him.  Id.

Between January 1, 2024, to March 23, 2024, Warfield lost his will to eat and went on a 70-day hunger strike.  Id.  He was then prescribed a GI diet.  Id.  Despite being prescribed a special diet, Warfield claims that some guards purposely brought him a regular meal instead of his GI diet, refused to get him the correct meal, or served him his GI meal hours after regular meals were served.  Id.  Along with obstructing Warfield's access to a GI diet, some guards would not deliver his "medically ordered" diabetic snack.  Id.

Warfield also claims that prison staff continue to deprive him of his property.  In late July 2023, Warfield asked "Jared (Jerry) Hettich" about his missing legal paper, and Hettich responded, "You do not like Wisconsin do you.  You should think about that when you complain about staff."  Id. ¶ 13.  Along with his missing legal property, Warfield asserts that he has not been given access to all his medical records.  Id. ¶ 14.  Warfield also states that prison staff have withheld financial records from him, including proceeds from the sale of Fannie Mae stock.  Id. ¶¶ 14–15.  Warfield posits that all his property—be it legal, medical, or financial—are needed for his state criminal cases and to finish drafting a complaint for a federal lawsuit.  Id. ¶ 15.  Lastly, Warfield contends that South Dakota Department of Corrections' staff destroyed his typewriter to prevent [him] from drafting legal complaints, exhausting his administrative remedies, and writing letters to attorneys and the courts.  Id. ¶ 23.

## B.  Legal Standard

Under 28 U.S.C. § 1915A(a), this Court must screen any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity." "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

When screening a complaint under § 1915A, a court must assume as true all facts well pleaded in the complaint. Scott v. Carpenter, No. 4:23-CV-04020-RAL, 2023 WL 4249200, at *4 (D.S.D. June 29, 2023) (citing Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995)). Courts must liberally construe pro se and civil rights complaints. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Even with a liberal construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citing Kaylor v. Fields, 661 F.2d 1177, 1183 (8th Cir. 1981)). "Civil rights complaints cannot be merely conclusory." Scott, 2023 WL 4249200, at *4 (citing Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam)).

The complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Id. (internal citation omitted); Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (citing Twombly and noting parenthetically that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory"). When a complaint "does not contain these bar essentials, dismissal is appropriate." Tornquist v.

6

South Dakota, 4:23-cv-04195-LLP, 2024 WL 3967357, at *2 (D.S.D. Aug. 28, 2024) (citing

Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985)).

### III.    Warfield's Causes of Action

"Because vicarious liability is inapplicable to [suits brought under 42 U.S.C. § 1983], a

plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct.
> As we have held, a supervising officer can be liable for an inferior officer's
> constitutional violation only if he directly participated in the constitutional
> violation, or if his failure to train or supervise the offending actor caused the
> deprivation.

Tornquist, 2024 WL 3967357, at *5 (alteration in original) (quoting Parrish v. Ball, 594 F.3d

993, 1001 (8th Cir. 2010)).  Warfield's "individual capacity claims must allege that each

individual defendant either participated in the unconstitutional conduct or caused the conduct to

occur through a failure to train or supervise the offending actor." Id.  But personal involvement

by defendant state officers is not required in a plaintiff's official capacity claim for injunctive

relief; all that is required is that the defendant officers, "by virtue of his [or her] office, has some

connection" with the unconstitutional conduct.  See Ex parte Young, 209 U.S. 123, 157 (1908).

"The requisite elements of Article III standing are well established: A plaintiff must

allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to

be redressed by the requested relief." Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 816 (8th

Cir. 2008) (quoting Hein v. Freedom from Religion Found., 551 U.S. 587, 598 (2007).  Thus,

Warfield only has standing to bring claims for injunctive relief if the relief he seeks would

redress his alleged injuries.  See id.

### A. Claims Against Unnamed Defendant

Warfield twice names "Jane/John Doe(s)" as a defendant in the caption of his Complaint.

Doc. 3-1 at 1. Paragraph 16 of his Complaint explains why he did not identify the defendant:

> On or about Monday February 26, 2024, between 21:00 to 21:35, I asked officer Rodriquez, "who was that other officer with you and Lt. Hofer on May 11, 2024?"[4] CO Rodriquez responded threatening, "We will send you back to Wisconsin." I did not ask CO Rodriquez any further questions after he threatened to have me transferred out-of-state. They know I'm scared about being transferred, lack of medical, abusive treatment by Wisconsin DOC officers and restricted legal access. Only asked CO Rodriquez that unknown officers name to include it in this complaint, however, was threatened to be sent back to Wisconsin, as punishment, for asking for that unknown officer's name.

Doc. 1 ¶ 16. Normally, "fictitious parties may not be named as defendants in a civil action."

Milne v. Gaden, No. 5:22-cv-5017-LLP, 2022 WL 2953031, at *2 (D.S.D. July 26, 2022) (citing

Est. of Rosenberg, 56 F.3d at 37). That said, it is error for a court to dismiss a claim against an

unnamed defendant if the complaint includes sufficient facts for the unnamed defendant to be

identified after reasonable discovery. Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985); Milne,

2022 WL 2953031, at *2. "Dismissal is proper only when it appears that the true identity of the

defendant cannot be learned through discovery or the court's intervention." Munz, 758 F.2d at

1257.

Warfield's Complaint likely contains enough information to identify the unnamed

defendant. Warfield provides the specific date and the names of two of the three individuals

involved. For example, the Complaint details that on May 11, 2023, Lt. Hofer, Officer

Rodriquez, and the unnamed officer escorted Warfield to "ID," placed him in a holding cell and

---

[4] While Warfield states May 11, 2024, this Court believes he is referring to the May 11, 2023 incident that he described in paragraphs 1 and 2 of his Complaint. Doc. 3-1 ¶ 2. To be sure, Warfield filed his Complaint on March 13, 2024, so it appears that he simply got the year mixed up.

informed him that he was being transported out of state. Doc. 1 ¶ 2. A few hours later, the same three officers returned to the holding cell and walked Warfield from "ID" back to his prison cell, where he discovered his possessions, including legal documents, had been packed into boxes in preparation of his transfer to Wisconsin. Id. ¶ 2. Given the detail included, reasonable discovery should identify the unnamed defendant.

That said, even if Warfield can identify the unnamed defendant, amending his Complaint to do so would likely be futile. Construed liberally, Warfield appears to assert a claim against the unnamed defendant for the taking of his legal property. However, as explained in more depth below, see infra III.D.5.b., Warfield has an adequate state remedy available to pursue the deprivation of his personal property. Given the availability of this state remedy, any Fourteenth Amendment due process claim alleging the deprivation of property would not entitle him to relief. And Warfield has not shown that the taking of his legal property equated to being denied access to the courts, see infra III.D.2.

## B. Claims Against a State or State Entity

Warfield sues both the State of South Dakota, the South Dakota Department of Corrections, the State of Wisconsin, and the Wisconsin Department of Corrections. Doc. 3-1. Both states are "generally immune from suit." Will v. Mich. Dep't of State Police, 491 U.S. 58, 65 (1989); see also Tornquist, 2024 WL 3967357, at *3; Cole v. Kramlinger, No. 24-cv-03521, 2024 WL 4608971, at *2 (D. Minn. Oct. 29, 2024) (noting how Wisconsin must consent to being sued under § 1983). In passing 42 U.S.C. § 1983, Congress "did not abrogate states' Eleventh Amendment immunity from suit in federal court." Tornquist, 2024 WL 3967357, at *3 (citing Will, 491 U.S. at 65). States are not a person under § 1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002) (reiterating that "a state is not a 'person' against

whom a §1983 claim for money damages might be asserted").  As such, § 1983 does not authorize suits against "States or governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes."  Will, 491 U.S. at 70.  The Eleventh Amendment thus bars Warfield's claims for money damages against both the State of South Dakota and the State of Wisconsin.

"The Eleventh Amendment [also] bars suits against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought."  Thornton v. Dep't of Corr., No. 4:23-cv-04215-CCT, 2024 WL 4787875, at *2 (D.S.D. Nov. 14, 2024) (citing Cory v. White, 457 U.S. 85, 90–91 (1982)).  "In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines powers created by state law, the degree of autonomy and control, and whether it is funded by the state treasury."  Id. (citing Greenwood v. Ross, 778 F.2d 448, 453 (8th Cir. 1985)).

The South Dakota Department of Corrections stems from state law, id. (citing SDCL § 1-15-1.2), and all South Dakota "state correctional facilities, and their departments, are 'under the direction and government of the Department of Corrections,'" id. (citing SDCL § 24-1-4).  As a result, the South Dakota "Department of Corrections is an arm of the state of South Dakota," which "is not subject to suit under § 1983."  Id.

The same is true for the Wisconsin Department of Corrections.  See Wis Stat. Ann. § 15.14 (West 2024).  The "Wisconsin Supreme Court has held that the Wisconsin Department of Corrections is an arm of the State."  Shelton v. Dep't of Corr., 2021AP713, 2022 WL 1634237, at *1 (Wis. Ct. App. Feb. 22, 2022) (citing Mayhugh v. Wisconsin, 867 N.W.2d 754, 762 (Wis. 2015)).  The Wisconsin DOC "lacks budgetary autonomy" and "is funded by general state revenue," which is "controlled by the legislature through the appropriation process."

Mayhugh, 867 N.W.2d at 760–61 (citing Wis. State. §§ 16.50(1)(a), 20.410, 301.10).  Its

operations are also "subject to state control[]."  Id. at 760.  The Wisconsin DOC has limited

powers to enter contracts.  Id.  It cannot buy "real estate, goods, [or] services," nor can it "incur

any liability beyond the amount appropriated to it."  Id. (citing Wis. Stat. §§ 16.848,

301.235(2)(a)).  Given the department's provenance and its limited statutory powers, the

Wisconsin Department of Corrections is an arm of the state and subject to sovereign immunity.

Thus, all of Warfield's claims against the State of South Dakota, the South Dakota Department

of Corrections, the State of Wisconsin, and the Wisconsin Department of Corrections are

dismissed with prejudice under 28 U.S.C. § 1915A(b)(1).

### C. Claims Against Out-of-State Defendants

Much of Warfield's Complaint delves into conduct that occurred while he was

incarcerated in Wisconsin.  He alleges the State of Wisconsin and the Wisconsin Department of

Corrections violated his right to access the courts, used excessive force, were deliberately

indifferent to his serious medical needs, deprived him of personal property and a grievance

process, and violated his rights under the Americans with Disabilities Act.  To be sure, Warfield

does not name any specific correctional officer from Wisconsin as a defendant, but he does refer

to "all staff" followed by him naming the Wisconsin Department of Corrections.  This Court

liberally construes his Complaint as naming all staff from the Wisconsin Department of

Corrections.  As addressed directly above, neither the State of Wisconsin nor the Wisconsin

Department of Corrections are proper defendants here.  And to the extent that Warfield intended

to sue correctional officers employed by the Wisconsin Department of Corrections, those employees would be out-of-state defendants.[5]

To determine whether this Court has personal jurisdiction over a nonresident defendant, it must decide "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant[,] and (2) whether the exercise of jurisdiction comports with due process." Hunter v. Sioux City Police Dep't, No. 4:18-cv-04119-LLP, 2018 WL 4853912, at *3 (D.S.D. Oct. 5, 2018) (citing Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006)). "Section 1983 does not, by itself, confer nationwide service of process or jurisdiction upon a federal district court to adjudicate claims arising under that statute." Id. (citing Trujillo, 465 F.3d at 1217); see also Johnston v. Wilkins, 709 F. App'x 404 (8th Cir. 2018) (upholding preservice dismissal of § 1983 action for lack of personal jurisdiction).

For this Court to exercise personal jurisdiction over the nonresident defendants, Warfield must state enough facts in his "complaint to support a reasonable inference that [the nonresident] defendants may be subjected to jurisdiction" in South Dakota. Hunter, 2018 WL 4853912, at *4 (citing Steinbuch v. Cutler, 518 F.3d 580, 585 (8th Cir. 2008)). South Dakota's long-arm statute confers jurisdiction to the fullest extent allowed by the Due Process Clause. Bell Paper Box, Inc. v. Trans W. Polymers, Inc., 53 F.3d 920, 921 (8th Cir. 1995) (citing Ventling v. Kraft, 161 N.W.2d 29, 34 (1968)). Accordingly, this Court need only address whether exercising personal jurisdiction over the out-of-state defendants satisfies due process. Dakota Indus. v. Ever Best Ltd., 28 F.3d 910, 915 (8th Cir. 1994).

---

[5] Although the absence of personal jurisdiction is a defense that may be waived, in limited circumstances, a district court may consider personal jurisdiction sua sponte and dismiss a claim under § 1915 when the "claim's factual backdrop clearly beckons the defense." Trujillo v. Williams, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting Fratus v. DeLand, 49 F.3d 673, 676 (10th Cir. 1995)).

"Due Process requires that there be minimum contacts between the nonresident defendant and the forum state such that the assertion of personal jurisdiction is consistent with traditional notions of fair play and substantial justice." Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir. 2010) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291–92 (1980)). "Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there." Id. (alteration in original) (quoting Bell Paper Box, 22 F.3d at 818).

"The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." Hunter, 2018 WL 4853912, at *4 (citing Helicopters Nactionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984)). "A state may exercise general jurisdiction if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged inquiry need not have any connection with the forum state." Id. (quoting Steinbuch, 518 F.3d at 586). "Specific jurisdiction on the other hand is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or related to those activities." Id. (quoting Steinbuch, 518 F.3d at 586).

Here, Warfield has not and cannot plead facts that would support this Court exercising jurisdiction over any out-of-state employees of the Wisconsin Department of Corrections. Yet before dismissing Warfield's claims against the out-of-state prison staff, this "Court must determine 'if it is in the interest of justice' to transfer this action 'to any other such court in which the action . . . could have been brought at the time it was filed.'" Id. at *4 (citing 28 U.S.C. § 1631); Johnston, 709 F. App'x at 405 (remanding plaintiff's claim for district court to

decide whether interests of justice required transfer under § 1631). A court should transfer a plaintiff's claim under § 1631, rather than dismiss it, "when a plaintiff in good faith filed in the wrong court and the statute of limitations would have" lapsed before he could refile in the proper court. Hunter, 2018 WL 4853912, at *4 (quoting Gunn v. U.S. Dep't of Agric., 118 F.3d 1233, 1240 (8th Cir. 1997)).

Because § "1983 does not contain a specific statute of limitations," "the Supreme Court has held that § 1983 claims accruing within a particular state are to be governed by that state's general personal-injury statute of limitations." Id. (citing Ketchum v. City of West Memphis, 974 F.2d 81, 82 (8th Cir. 1992). The claims Warfield alleges against the nonresident defendants occurred in 2023. "In Wisconsin, the statute of limitations for § 1983 claims is three years." Brown v. Thao, No. 23-cv-0053, 2023 WL 3752171, at *1 (E.D. Wis. June 1, 2023) (citing Wis. Stat. § 893.53). As such, Warfield's claims are not in imminent danger of running afoul the limitations deadline, and he may pursue those claims in the correct federal district court in Wisconsin if he so chooses. Because this Court does not have personal jurisdiction over "all staff" within the Wisconsin Department of Corrections, Warfield's claims against them are dismissed without prejudice under § 1915A(b)(1).[6]

---

[6] The Eighth Circuit has held that an inmate's claims for injunctive relief are moot when he is transferred to another facility because he is no longer subjected to the prison official's unlawful conduct Gladson v. Iowa Dep't of Corr., 551 F.3d 825, 835 (8th Cir. 2009) (citing Pratt v. Corr. Corp. of Am., 267 F. App'x 482, 482 (8th Cir. 2008) (per curiam)); see also Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999) (finding that an inmate's transfer to a new facility weeks before a trial for violating his First Amendment rights mooted his claims for injunctive relief); Wycoff v. Brewer, 572 F.2d 1260, 1262 (8th Cir. 1978) (holding that a prisoner's Fourteenth Amendment claims for injunctive relief were moot once plaintiff was transferred to a different penitentiary). Because Warfield was transferred back to South Dakota and is incarcerated at SDSP, any injunctive relief claims he asserts against Wisconsin or the Wisconsin Department of Corrections are moot.

### D. Official Capacity Claims Against State Employees for Money Damages

Warfield sues all defendants in their official capacities: Jared (Jerry) Hettich, Troy Ponto, Sam Yost, Eric Timmerman, Cory Ambrose, Officer Rodriquez, Officer Allen, Officer Johns, Derek Ekeren, Ian Packer, Caleb Evans, Jess Boysen, Teressa Bittinger, and Kellie Wasko.[7] Doc. 3-1 at 1. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will, 491 U.S. at 71 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). "As such, it is no different than a suit against the State itself." Id. Although "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a [monetary] remedy against a State for alleged deprivations of civil liberties." Id. at 66; see also Tornquist, 2024 WL 3967357, at *4–5 (applying Eleventh Amendment immunity to employees of the SDSP).

The Eleventh Amendment bars actions against a state for money damages unless the state has waived sovereign immunity. Will, 491 U.S. at 67. That said, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983" and thus subject to suit. Will, 491 U.S. at 71 n.10 (citing Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)). Warfield seeks both monetary damages and injunctive relief against all defendants. Claims for money damages against defendants employed by the State of South Dakota or State of Wisconsin in their official capacities are the equivalent of claims for money damages against each state. As explained above, neither South Dakota nor Wisconsin have waived its sovereign

---

[7] The caption to Warfield's Complaint also refers to "all staff." Doc. 3-1. Liberally construed, this Court understood Warfield to be asserting his claims against "all staff" at both the South Dakota Department of Corrections and the Wisconsin Department of Corrections. But, as discussed above, claims against unnamed defendants are not cognizable claims. And an official capacity claim for money damages against "all staff" is no different from a suit against the state itself.

immunity to allow official capacity claims for money damages. Thus, Warfield's claims against any state employee in their official capacity for money damages are dismissed without prejudice under 28 U.S.C. § 1915A(b)(2).

**E. Individual Capacity Claims and Official Capacity Claims for Injunctive Relief**

**1. First Amendment Retaliation Claims**

Warfield alleges retaliation in violation of his First Amendment rights. He alleges the defendants retaliated against him for filing grievances and lawsuits by transferring him to a Wisconsin prison, depriving him of personal property, and depriving or delaying proper medical care.

To allege a First Amendment retaliation claim, a plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Spencer v. Jackson County, 738 F.3d 907, 911 (8th Cir. 2013) (quoting Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)). "[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the protected [activity]." Revels, 382 F.3d at 876. "The filing of a grievance, like the filing of an inmate lawsuit is protected First Amendment activity." Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994)).

Warfield alleges facts sufficient to state a claim for First Amendment retaliation. He alleges that DOC staff retaliated against him for filing grievances and lawsuits against prison staff. Grievances and lawsuits are protected First Amendment activities under Jacks, 486 F.3d at 1029 (citing Dixon, 38 F.3d at 379); Spencer, 738 F.3d at 911 (noting the right to pursue legal action under the First Amendment is established). Warfield asserts that he has been transferred

16

out of state, that his medical records were not sent to the Wisconsin Department of Corrections, that he had legal records taken away, that personal property had been taken or destroyed, that guards withheld his medically ordered GI diet, and that he has been denied snacks for his diabetes. While some of these actions do not allege constitutional violations on their own, "an act in retaliation for the exercise of a constitutionally protected right is actionable under [§] 1983 even if the act, when taken for a different reason, would have been proper." Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990) (quoting Freeman v. Blair, 793 F.2d 166, 178 (8th Cir. 1986), vacated on other grounds, 483 U.S. 1014 (1987)). Warfield thus alleges that he engaged in protected activities, that the defendants took adverse action against him that would chill a person of ordinary firmness from engaging in those activities, and that the adverse action was motivated at least in part by him engaging in protected activities—filing grievances and lawsuits.

That said, under Parrish, to recover money damages, Warfield must allege that each individual defendant either directly partook in the unconstitutional conduct or caused it to occur through a failure to train or supervise. 594 F.3d at 1001. Here, even though he alleged sufficient facts to state a claim for First Amendment retaliation, Warfield has not asserted that any of the named defendants engaged in the retaliatory conduct alleged, nor does he assert that the alleged conduct resulted from a failure to train or supervise. Thus, Warfield's First Amendment retaliation claims against the defendants in their individual capacities are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).[8]

---

[8] That said, this Court gives Warfield **thirty days** to file an amended complaint that specifically alleges conduct by named defendants and specifically sets forth Warfield's claims against them. If Warfield does amend his complaint, he should specifically:

    (1) identify and name as a Defendant each individual who allegedly violated his constitutional rights; (2) explain how each individual personally violated his

But Warfield also sues all defendants in their official capacity. Warfield's official capacity claim for injunctive relief need only allege that each defendant, "by virtue of his [or her] office, has some connection" with the unconstitutional conduct for which Warfield seeks injunctive relief. See Ex Parte Young, 209 U.S. at 157. Warfield requests an injunction to remedy current retaliation and prevent future retaliation. He, therefore, has standing to bring these claims for injunctive relief. See Patel, 515 F.3d at 816 (citing Hein, 551 U.S. at 598). Viewed liberally, Warfield's First Amendment retaliation claims against all defendants in their official capacities for injunctive relief survive § 1915A screening by a thin margin.

### 2. First Amendment Access-to-the Courts Claim

Warfield brings a claim for a violation of his First Amendment right to access the courts. He alleges that SDSP staff are depriving him of legal and medical records that are needed for claims he is pursuing in state and federal court. See Doc. 1 ¶¶ 14, 17, 18. "Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." Myers v. Hundlay, 101 F.3d 542, 544 (8th Cir. 1996) (citing Lewis v. Casey, 518 U.S. 343, 351 (1996)); White v. Kautzky, 494 F.3d 677, 679 (8th Cir. 2007). But "[t]o state a claim, . . . inmates must assert that

---

constitutional rights; (3) state in what capacity he is suing each Defendant (individual capacity, official capacity, or both); (4) identify his prisoner status at the time of the alleged unconstitutional conduct; (5) state the injury he suffered as a result of each Defendant's alleged unconstitutional conduct; and (6) state what relief he seeks from the Court.

Thornton, 2024 WL 4787875, at *4 (quoting Gray v. Does, No. 23-cv-00206, 2023 WL 7381414, at *2 (E.D. Ark. Oct. 30, 2023)). Because an amended complaint supersedes the original, Warfield must include all claims that he seeks to assert against the defendants in the amended complaint. He must also comply with this court's local rules, which require that "any party moving to amend a pleading must attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or underlined so that they may be easily identified." D.S.D. Civ. LR 15.1.

they suffered an actual injury to pending or contemplated legal claims." Myers, 101 F.3d at 544 (citing Lewis, 518 U.S. at 351).

Whether a plaintiff's claim asserts that access to legal research was restricted or inadequate, that he was not provided adequate supplies to mail a complaint or legal correspondence, or that the loss or taking of unspecified legal documents violates his First Amendment right to access the courts, the injury an inmate must prove is "a lost, rejected, or impeded legal claim." Id. A viable claim requires Warfield to allege an actual injury regarding "a nonfrivolous and arguably meritorious underlying legal claim." White, 494 F.3d at 680 (citing Christopher v. Harbury, 536 U.S. 403, 413 (2002)). An "actual injury" means "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 349. Though Warfield alleges that SDSP prison staff broke his typewriter to impede him from filing lawsuits or communicating with counsel and the courts, he has not alleged actual prejudice to a contemplated legal claim. And he provides scant detail about the legal claims he has been working on, so this Court cannot assess whether his future claims are "nonfrivolous and arguably meritorious." His First Amendment Access-to-the Courts claims are dismissed without prejudice 28 U.S.C. § 1915A(b)(1).

### 3. Eighth Amendment Excessive Force Claims

Warfield alleges an Eighth Amendment excessive force claim against Correctional Officer Boysen for "palm punch[ing]/push[ing]" Warfield after Warfield told Boysen that he was on his way to report Boysen's misconduct. Doc. 1 ¶ 12. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" against a prisoner. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). The "core judicial inquiry" for an Eighth Amendment excessive force claim "is whether the accused officer[] applied force

'in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Peterson v. Heinen, 89 F.4th 628, 635 (8th Cir. 2023) (quoting Hudson, 503 U.S. at 7). In determining whether an officer used force in a "good-faith effort to maintain or restore discipline," courts consider (1) "the need for application of force," (2) "the relationship between that need and the amount of force used," (3) "the threat 'reasonably perceived by the responsible officials,'" and (4) "any efforts made to temper the severity of a forceful response." Id. (quoting Hudson, 503 U.S. at 7).

At this time, taking all facts asserted by Warfield as true, which this Court must do at this stage, it cannot say that Warfield's excessive force claim wholly lacks merit. Thus, Warfield's Eighth Amendment Excessive Force claim against Officer Boysen in his individual capacity for money damages and official capacity for injunctive relief survives screening under § 1915A(b)(1).

### 4. Eighth Amendment Deliberate Indifference to Serious Medical Needs

Warfield alleges that defendants have denied him adequate medical care. Construing his Complaint liberally, he asserts claims for deliberate indifference to serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (internal citation omitted) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner

that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. "Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions." Tornquist, 2024 WL 3967357, at *7 (citing Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)).

The deliberate indifference standard includes "both an objective and subjective component." Dulany v. Carnaha, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). Warfield "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Warfield asserts a deliberate indifference claim based on the medical care he has received since returning to the SDSP. Doc. 1 ¶ 12. He first states that he was prescribed a GI diet, but some guards would bring him "a regular diet meal in a GI marked tray" and then refuse to get him the correct meal, or they would make him "wait hours after regular meal trays were served before [serving his] GI diet." Id. He also claims that prison officials withheld his diabetic snack. Id. Warfield explains that the guards would deliver one to other inmates, but not him, despite

21

him asking the guards. Id. Liberally construed, these facts are enough to show that he has serious medical needs that require specific treatment.[9]

That said, Warfield's individual capacity claims must also allege that each individual defendant was aware of and deliberately indifferent to his serious medical needs. See Farmer, 511 U.S. at 837. Even though he stated sufficient facts to show he had serious medical needs, Warfield has not specified whether any of the named defendants were both aware of and deliberately indifferent to those serious medical needs. Thus, Warfield's Eighth Amendment deliberate indifference to serious medical needs claims against Jared (Jerry) Hettich, Troy Ponto, Sam Yost, Eric Timmerman, Cory Ambrose, Officer Rodriquez, Officer Allen, Officer Johns, Derek Ekeren, Ian Packer, Caleb Evans, Jess Boysen, Teressa Bittinger, and Kellie Wasko in their individual capacities are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

Warfield also has not alleged sufficient facts to state a claim against all South Dakota defendants in their official capacity for injunctive relief. Although personal involvement is not normally required in official capacity claims for injunctive relief, see Ex parte Young, 209 U.S. at 157, because the constitutional violation alleged here is cruel and unusual punishment in violation of the Eighth Amendment and punishment requires intent, some level of subjective knowledge is required. See Farmer, 511 U.S. at 844. Other courts have held that this subjective component can be met through "the institution's historical indifference" rather than knowledge held by a specific individual after that individual was substituted as the named official capacity defendant. LaMarca v. Turner, 995 F.2d 1526, 1542 (11th Cir. 1993); see also Alberti v. Sheriff

---

[9] Warfield further asserts that he suffers from an undiagnosed brain disease affecting his white matter. Doc. 1 ¶ 32. But, as his Complaint clearly states, there has been no diagnosis, and he has not alleged enough facts for this Court to conclude that his condition is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Coleman, 114 F.3d at 784.

of Harris Cnty., 978 F.2d 893, 894–95 (5th Cir. 1992) (per curiam) (finding "that the state knew"
of severe overcrowding in Harris County jails); Terry ex rel. Terry v. Hill, 232 F. Supp. 2d 934,
944 (E.D. Ark. 2002) (considering "the entire state of Arkansas, including the executive and
legislative branches," to determine whether "the state ha[d] been deliberately indifferent to the
needs of pretrial detainees" because defendant, "[i]n his official capacity, . . . [was] merely a
representative of . . . the state of Arkansas in the system of mental health treatment" (footnote
omitted)).  Warfield's Complaint specifically states that he has filed no grievances regarding
deliberate denial of a GI diet or diabetic snack, and he has not claimed to have informed any
other prison official of being denied treatment for serious medical conditions.  Doc. 1 ¶ 12.
Thus, Warfield's Eighth Amendment deliberate indifference to serious medical needs claim
against all defendants in their official capacities for injunctive relief are dismissed without
prejudice under 28 U.S.C. § 1915A(b)(1).

   **5. Fourteenth Amendment Due Process Claims**

      **a. Grievance Policy Claims**

   Warfield's Complaint makes several references to being unable to file grievances or
complaints against prison staff because "one can't get any and [that he is] two [sic] scared too."
Doc. 1 ¶ 12.  Liberally construed, Warfield alleges that his inability to file grievances deprives
him of his right to due process under the Fourteenth Amendment.  "While a violation of a state-
created liberty interest can amount to a violation of the Constitution, not every violation of state
law or state-mandated procedures is a violation of the Constitution."  Buckley v. Barlow, 997
F.2d 494, 495 (8th Cir. 1993) (per curiam) (holding that a refusal to process grievances alone
was "not actionable under § 1983").  "[A prison] grievance procedure is a procedural right only,
it does not confer any substantive right upon the inmates.  Hence, it does not give rise to a

23

protected liberty interest requiring the procedural protections envisioned by the [F]ourteenth [A]mendment." Id. (first alteration in original) (quoting Azeez v. DeRobertis, 568 F. Supp. 8, 10 N.D. Ill. 1982)); see also King v. Houston, 556 F. App'x 561, 563 (8th Cir. 2014) (per curiam) (explaining that, under Buckley, "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983" (citing 997 F.2d at 495)).

Warfield claims that he cannot file grievances either because he "can't get any" or out of fear that prison officials will retaliate against him. Doc. 1 ¶ 12. These claims fail under Buckley. See 997 F.2d at 495. But, as addressed above, see supra III.E.1., these claims are, if properly pleaded, cognizable as First Amendment retaliation claims. Thus, Warfield's Fourteenth Amendment due process claims for inadequate grievance processes are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

### b. Property Claims

Warfield also claims that defendants violated his Fourteenth Amendment right to due process by preventing him from concentrating his assets into a single account, "effectively depriving" him of proceeds from the sale of Fannie Mae stock, and confiscating/failing to return copies of his medical and legal records. See Doc. 1 ¶¶ 14–15. Under the Fourteenth Amendment, a "state [cannot] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. An intentional deprivation of property does not violate due process if there is an adequate post-deprivation remedy available. Hudson v. Palmer, 468 U.S. 517, 533, 536 (1984). But when "the property deprivation is effected pursuant to an established state procedure[,]" a post-deprivation state remedy does not satisfy due process. Id. at 534 (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)). South Dakota law provides Warfield an adequate post-deprivation remedy: SDCL § 21-3-3 recognizes a cause of

24

action for wrongful conversion of personal property.[10] And Warfield does not allege that the deprivation of his property occurred "pursuant to an established state procedure" or regulation. See Palmer, 468 U.S. at 534.

Moreover, while "inmates have a property interest in money received from outside sources," they "are not entitled to complete control over their money while in prison." Mahers v. Halford, 76 F.3d 951, 954 (8th Cir. 1996); see also Foster v. Hughes, 979 F.2d 130, 131 (8th Cir. 1992) (stating that inmates have no constitutional right to place their money in interest-bearing accounts). So, even if Warfield's transfer to Wisconsin did impact his ability to concentrate his assets into a single account, it does not arise to a Fourteenth Amendment violation. Because an adequate post-deprivation state-court remedy exists for Warfield's other property claims, his Fourteenth Amendment due process deprivation of property claims are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

### c. Confinement in Another State

Richmond seeks to enjoin the defendants from transferring him to an out-of-state prison. But an inmate "has no justifiable expectation that he will be incarcerated in any particular State." Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Scott, 2024 WL 278827, at *3 (D.S.D Jan. 25,

---

[10] SDCL § 21-3-3 provides:

The detriment caused by the wrongful conversion of personal property is presumed to be:
(1) The value of the property at the time of the conversion, with the interest from that time;
(2) Where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party;
(3) A fair compensation for the time and money properly expended in pursuit of the property.

Such presumptions cannot be repelled in favor of one whose possession was wrongful from the beginning by his subsequent application of the property to the benefit of the owner, without his consent.

2024) ("Prisoners do not have a constitutional right to be incarcerated at a particular prison.");

Lyon v. Farrier, 727 F.2d 766, 768 (8th Cir. 1984) ("Among the liberties which prisoners do not

enjoy is choice of cells.  Transfer within the prison, or to another prison, is within the discretion

of prison officials.").  "Statutes and interstate agreements recognize that, from time to time, it is

necessary to transfer inmates to prisons in other States." Olim, 461 U.S. at 246.  South Dakota,

along with many other states, "have statutes providing for the transfer of a state prisoner to a

federal prison, or another State's prison." Id. (internal citation omitted); SDCL § 1-15-10.3.[11]

"Corrections compacts between States, implemented by statutes, authorize incarceration of a

prisoner of one State in another State's prison." Id.  "Confinement in another State . . . is 'within

the normal limits or range of custody which the conviction has authorized the State to impose.'"

Id. at 247 (quoting Meachum v. Fano, 427 U.S. 215, 225 (1976)).  Warfield's transfer to an out-

of-state facility is a function of prison administration.  As a result, both his individual and official

capacity Fourteenth Amendment due process claims arising from his interstate transfer to

Wisconsin are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).[12]

---

[11] In pertinent part, SDCL § 1-15-10.3 provides:
> The Department of Corrections may transfer any person who is a resident at any institution under its control to another state or to the federal government for like institutional care, and contract with the proper authorities of such other state or federal government for the support, maintenance, care, and treatment in the appropriate institution in such state or of the federal government.

[12] Although transfer to an out of state prison is not itself actionable under § 1983, a transfer becomes actionable if done in retaliation of an inmate exercising a constitutionally protected right.  See Goff v. Burton, 7 F.3d 734, 737 (8th Cir. 1993) ("prison officials may transfer a prisoner for whatever reason or for no reason at all, a prisoner cannot be transferred in retaliation for the exercise of a constitutional right." (Cleaned up)).  Thus, this Court has liberally construed Warfield's prison transfer claim as a First Amendment retaliation claim and has addressed it above, see supra III.D.5.c.

### 6. Fourteenth Amendment Equal Protection Claims

Warfield's Complaint also alleges an equal protection violation under the Fourteenth Amendment. Doc. 1 ¶ 20. He claims, "[t]he South Dakota Department of Corrections and staff are treating [him] differently than other similar situated inmates, in which they are not deprived or denied their property or use there of or retaliated against." Id.

The Fourteenth Amendment's equal protection clause requires the government to "treat similarly situated people alike." Tornquist, 2024 WL 3967357, at *9 (citing Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 984 (8th Cir. 2024)). This protection applies with equal force to prisoners. See id. To make out an equal protection claim, Warfield "must show that he [was] treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a 'fundamental right.'" Patel, 515 F.3d at 815 (quoting Weems v. Little Rock Police Dep't, 453 F.3d 1010, 1016 (8th Cir. 2006)); In re Kemp, 894 F.3d 900, 910 (8th Cir. 2018) ("[d]issimilar treatment of dissimilarly situated persons does not violate equal protection" (alteration in original) (quoting Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994)).

Because Warfield has not alleged that he is a member of a protected class, this Court has construed his claim to allege a class-of-one equal protection violation. To state a class-of-one equal protection claim, Warfield must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Engquist v. Or. Dep't of Ag., 553 U.S. 591, 601 (2008) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). "Absent a threshold showing that [the plaintiff] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." In re Kemp, 894 F.3d at 909 (quoting Klinger, 31 F.3d at 731).

27

Under this standard, Warfield fails to state a class-of-one equal protection claim. His Complaint "provides no specific examples of others who are similarly situated but treated differently." See Abdulrazzak v. Smith, No. 4:17-cv-04058-KES, 2018 WL 4625409, at *8 (D.S.D. Sept. 26, 2018); see Doc. 1 ¶ 20. Without more, his conclusory assertion that "staff are treating [him] differently than other similar situated inmates," Doc. 1 ¶ 20, cannot sustain a class-of-one equal protection claim. While Warfield employs phrases associated with an equal protection claim, he does not allege enough facts to support his claim. Thus, Warfield fails to state a claim under the Equal Protection Clause, and his claim is dismissed without prejudice under § 1915A(b)(1).

## IV.    Motions to Compel

Warfield moved for an order compelling the defendants to send and deliver mail in 24 hours or less. Doc. 4. He later filed an amended motion seeking the same relief. Doc. 6. This is also not Warfield's first attempt at trying to stop the South Dakota Department of Corrections Staff from impeding or delaying legal mail. Warfield v. Mnuchin, 4:20-cv-04121-RAL, 2020 WL 5849716, at *4 (D.S.D. Oct. 1, 2020). As the court noted then, he does not support his request with any reference to Federal Rule of Civil Procedure or any other legal authority. Typically, motions to compel have to do with discovery. See Fed. R. Civ. P. 36. As such, Warfield's motion is premature. He has not yet served the defendants, and the defendants have not yet answered Further, Jason Mills, the employee Warfield claims is impeding and delaying his mail, has not been named as a defendant in this lawsuit. For these reasons, this Court denies Warfield's motion to compel, Doc. 4, and amended motion to compel, Doc. 6.[13]

---

[13] This Court notes that Warfield's requested relief could be construed as a preliminary injunction, but his access to the courts claim did not survive screening. And the party moving for preliminary injunctive relief "must necessarily establish a relationship between the injury claimed in the party's

## V.    Conclusion

For the reasons mentioned above, it is hereby

ORDERED that Warfield's Motion to Amend Complaint, Doc. 3, is granted.  It is further

ORDERED that Warfield's claims against the State of South Dakota, The State of Wisconsin, the South Dakota Department of Corrections, and the Wisconsin Department of Corrections are dismissed with prejudice under 28 U.S.C. § 1915A(b)(1).  It is further

ORDERED that Warfield's claims against all defendants in their official capacity for money damages are dismissed without prejudice under 28 U.S.C. § 1915A(b)(2).  It is further

ORDERED that Warfield's claims against all nonresident defendants in their individual capacities for money damages and official capacities for injunctive relief are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

ORDERED that Warfield's First Amendment retaliation claims against Jared (Jerry) Hettich, Troy Ponto, Sam Yost, Eric Timmerman, Cory Ambrose, Officer Rodriquez, Officer Allen, Officer Johns, Derek Ekeren, Ian Packer, Caleb Evans, Jess Boysen, Teressa Bittinger, and Kellie Wasko in their individual capacities for money damages are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).  It is further

ORDERED that Warfield's First Amendment retaliation claims against Jared (Jerry) Hettich, Troy Ponto, Sam Yost, Eric Timmerman, Cory Ambrose, Officer Rodriquez,

---

motion and the conduct asserted in the complaint." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (citing Penn v. San Juan Hosp., Inc., 528 F.2d 1181, 1185 (10th Cir. 1975)). "It is inappropriate to grant a preliminary injunction for matters 'lying wholly outside the issues in the suit.'" Brakeall v. Stanwick-Klemik, 4:17-cv-04101-LLP, 2019 WL 3807272, at *1 (D.S.D. Aug. 13, 2019) (quoting DeBeers Consol. Mines v. United States, 325 U.S. 212, 220 (1945)).

Officer Allen, Officer Johns, Derek Ekeren, Ian Packer, Caleb Evans, Jess Boysen, Teressa Bittinger, and Kellie Wasko in their official capacities for injunctive relief survive § 1915A screening.  It is further

ORDERED that Warfield's First Amendment access-to-the courts claims against Jared (Jerry) Hettich, Troy Ponto, Sam Yost, Eric Timmerman, Cory Ambrose, Officer Rodriquez, Officer Allen, Officer Johns, Derek Ekeren, Ian Packer, Caleb Evans, Jess Boysen, Teressa Bittinger, and Kellie Wasko in their individual capacities for money damages and official capacities for injunctive relief are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).  It is further

ORDERED that Warfield's Eighth Amendment excessive force claim against Jess Boysen in his individual capacity for money damages and official capacity for injunctive relief survives § 1915A screening.  It is further

ORDERED that Warfield's Eighth Amendment deliberate indifference to serious medical needs claims against (Jerry) Hettich, Troy Ponto, Sam Yost, Eric Timmerman, Cory Ambrose, Officer Rodriquez, Officer Allen, Officer Johns, Derek Ekeren, Ian Packer, Caleb Evans, Jess Boysen, Teressa Bittinger, and Kellie Wasko in their individual capacities for money damages and official capacities for injunctive relief are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).  It is further

ORDERED that Warfield's Fourteenth Amendment due process grievance policy claims against (Jerry) Hettich, Troy Ponto, Sam Yost, Eric Timmerman, Cory Ambrose, Officer Rodriquez, Officer Allen, Officer Johns, Derek Ekeren, Ian Packer, Caleb Evans, Jess Boysen, Teressa Bittinger, and Kellie Wasko in their individual capacities for money

damages and official capacities for injunctive relief are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Warfield's Fourteenth Amendment due process property claims against (Jerry) Hettich, Troy Ponto, Sam Yost, Eric Timmerman, Cory Ambrose, Officer Rodriquez, Officer Allen, Officer Johns, Derek Ekeren, Ian Packer, Caleb Evans, Jess Boysen, Teressa Bittinger, and Kellie Wasko in their individual capacities for money damages and official capacities for injunctive relief are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Warfield's Fourteenth Amendment due process prison transfer claims against (Jerry) Hettich, Troy Ponto, Sam Yost, Eric Timmerman, Cory Ambrose, Officer Rodriquez, Officer Allen, Officer Johns, Derek Ekeren, Ian Packer, Caleb Evans, Jess Boysen, Teressa Bittinger, and Kellie Wasko in their individual capacities for money damages and official capacities for injunctive relief arising from confinement in another state are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Warfield's Fourteenth Amendment equal protection claims against (Jerry) Hettich, Troy Ponto, Sam Yost, Eric Timmerman, Cory Ambrose, Officer Rodriquez, Officer Allen, Officer Johns, Derek Ekeren, Ian Packer, Caleb Evans, Jess Boysen, Teressa Bittinger, and Kellie Wasko in their individual capacities for money damages and official capacities for injunctive relief are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Warfield's motion to compel, Doc. 4, and amended motion to compel, Doc. 6, are denied. It is further

ORDERED that the Clerk shall send blank summons forms and U.S. Marshals Service forms (Form USM-285) to Warfield so that he may complete the form to cause his Complaint to be served upon Defendants (Jerry) Hettich, Troy Ponto, Sam Yost, Eric Timmerman, Cory Ambrose, Officer Rodriquez, Officer Allen, Officer Johns, Derek Ekeren, Ian Packer, Caleb Evans, Jess Boysen, Teressa Bittinger, and Kellie Wasko. It is further

ORDERED that Warfield shall complete and send the Clerk of Court a separate summons and USM-285 form for each defendant **within thirty days from the date of this Court's screening order**. Upon receipt of the completed summonses and USM-285 forms, the Clerk of Court will issue the summonses. If the completed summonses and USM-285 forms are not submitted as directed, the Complaint may be dismissed. It is further

ORDERED that the United States Marshals Service shall serve the completed summonses, together with a copy of the Complaint, Doc. 1, the amended complaint, Doc. 3-1, and this opinion and order upon the defendants. It is further

ORDERED that the defendants will serve and file an answer or responsive pleading to the Complaint on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

ORDERED that Warfield will keep this Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by this Court's Civil Local Rules while this case is pending.

DATED this 31 day of March, 2025.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE