UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KELLY WARFIELD,<br><br>Plaintiff,<br><br>vs.<br><br>JARED HETTICH, a/k/a Jerry, Individual and Official Capacity; TROY PONTO, Individual and Official Capacity; SAM YOST, Individual and Official Capacity; ERIC TIMMERMAN, Individual and Official Capacity; CORY AMBROSE, Individual and Official Capacity; OFFICER RODRIQUEZ, Individual and Official Capacity; OFFICER ALLEN, Individual and Official Capacity; OFFICER JONES, Individual and Official Capacity; DEREK EKEREN, Individual and Official Capacity; IAN PACKER, Individual and Official Capacity; CALEB EVANS, Individual and Official Capacity; JESS BOYSEN, Individual and Official Capacity; JANE DOES, Individual and Official Capacity; JOHN DOES, Individual and Official Capacity; TERESSA BITTINGER, Individual and Official Capacity; KELLIE WASKO, Individual and Official Capacity, along with all staff; OFFICER WINES, Individual and Official Capacity; JAKE HOFER, a/k/a Jack Hofer, Individual and Official Capacity; DONALD WILLIAMS, Individual and Official Capacity; AMBER PIRRAGLIA, Individual and Official Capacity; DANIEL SULLIVAN, Individual and Official Capacity; OFFICER STRUICKSMA, Individual and Official Capacity; CHARLES DOMBECK, Wisconsin DOC Staff, Individual and Official Capacity; JEREMY BECK, Wisconsin DOC Staff, Individual and Official Capacity; OFFICER KATZE, Wisconsin DOC Staff, | 4:24-CV-04049-ECS<br><br>OPINION AND ORDER RULING ON SEVERAL OF THE PARTIES' VARIOUS MOTIONS AND 1915A SCREENING |

| | |
|---|---|
| Individual and Official Capacity; SETH HUGHES, Individual and Official Capacity; SGT. DALASS, Wisconsin DOC Staff, Individual and Official Capacity; JERMAINE ROBINSON, Individual and Official Capacity,<br><br>Defendants. | |

Plaintiff Kelly Warfield, a former inmate at the South Dakota State Penitentiary (SDSP),[1] filed a pro se lawsuit alleging violations of his civil rights under 42 U.S.C. § 1983. Docs. 1, 3-1. Warfield filed an Amended Complaint. Doc 36. Because "an amended complaint supercedes an original complaint and renders the original complaint without legal effect," In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000), this Court will screen Warfield's Amended Complaint pursuant to 28 U.S.C. § 1915A, Beck v. LaFleur, 257 F.3d 764, 765 (8th Cir. 2001) (affirming dismissal of amended complaint on § 1915A screening when the court had previously screened original complaint under § 1915A). Counsel has appeared on behalf of Defendants Jared Hettich, Sam Yost, Eric Timmerman, Cory Ambrose, Officer Rodriquez, Officer Allen, Derek Ekeren, Jess Boysen, and Kellie Wasko (Collectively, "SD Defendants"). Doc. 26. SD Defendants move to dismiss Warfield's Amended Complaint. Doc. 37.

## I. Factual Background as Alleged by Warfield[2]

On January 11, 2023, Warfield showed an officer his "handwritten cell number '80' on [the] back of [an] envelope." Doc. 36 ¶ 12. A different South Dakota Department of Corrections (SDDOC) officer, Jess Boysen, yelled at Warfield, "are you [expletive] stupid, can't you read." Id. Despite Warfield informing Boysen that it was unnecessary to yell at him, Boysen continued

[1] At the time Warfield filed his Original Complaint, he was incarcerated at the SDSP. Doc. 1 at 20. Warfield has since been transferred to the Florida State Prison. Doc. 29; Doc. 53 at 4.

[2] Warfield makes many factual allegations against individuals who are not named as defendants. See Doc. 36. Accordingly, this Court recites the facts as related to the named Defendants.

to do so. Id. Warfield went to his cell. Id. Because he had previously been advised to report issues with officers to unit staff immediately, Warfield went downstairs to Derek Ekeren's office. Id. Ekeren was not in the office, so Warfield attempted to return upstairs. Id. But Warfield ran into Boysen, who yelled at Warfield and asked him what he was doing. Id. Warfield eventually said that he was going to report Boysen to unit staff. Id. Boysen "palmed punch/pushed" Warfield, and Warfield started back up the stairs to avoid Boysen because "it appeared [Boysen] pulled back his arm to strike at [Warfield] again." Id.

Following the attack from Boysen, Warfield lost his will to eat and started a hunger strike.[3] Id. ¶¶ 12, 25. On February 2, 2023, after twenty-three days of Warfield's hunger strike, Troy Ponto, Amber Pirraglia, and Daniel Sullivan met with Warfield to discuss the strike and related medical issues. Id. ¶ 25. Pirraglia indicated that Kellie Wasko sent her to speak with Warfield. Id. Pirraglia inquired as to why Warfield was not eating, and Warfield informed her that he "lost [his] will to eat over the Boysen incident." Id. Pirraglia encouraged Warfield to eat and drink water. Id. Health services staff had direct communications with Wasko or her office regarding Warfield's hunger strike. Id.

On May 11, 2023, when Warfield was working on his legal pleadings,[4] Corporal Donald Williams came to Warfield's cell to ask him to come to identification (ID) to take photos, but Warfield refused. Id. ¶ 2. Around 2:30 to 3:00 a.m., Williams, Lieutenant Hofer, Officer Nicholas Rodriquez, and other correctional officers came to Warfield's cell and threatened him to "cuff up or we will spray you." Id. Hofer instructed officers to "get whatever he was working

[3] Warfield also had a doctor's order noting that he was to receive a medical diet. Doc. 36 ¶ 12. Despite the order, Officers Caleb Evans, Ian Parker, Austin Johns, and Wines would bring Warfield a regular diet tray. Id.

[4] Warfield alleges that one legal document he was working on was a new certificate of service because Jermaine Robinson had not mailed Warfield's legal pleading for his criminal case, which Warfield alleges to have given to Robinson ten days prior. Doc. 36 ¶ 2.

on." Id. Hofer, Rodriquez, and another correctional officer walked Warfield to ID, placed Warfield in a holding cell, and informed him that he was being transferred out of state. Id. Around 5:00 a.m., Hofer,[5] Rodriquez, and the other correctional officer took Warfield back to his cell. Id. In Warfield's cell, his property was placed in five boxes, with several of his legal documents being separated from their envelopes. Id. Warfield later overheard these officers say, "he's going to contact his family and file grievances, were [sic] going to get in trouble." Id. (citation modified). Between May 11 and 19, 2023, Warfield noticed some of his legal property was missing. Id. ¶ 3. Officer Struicksma at some point informed Warfield that SDSP staff were having a special meeting about him. Id. ¶ 2. Warfield requested informal resolution request forms, request for administrative remedies forms, and appeals to secretary of corrections forms, but unit staff on his floor—including Hettich, Cory Ambrose, Eric Timmerman, and Robinson—have not provided any. Id. ¶ 19.

On May 19, 2023, at around 4:30 p.m., Caleb Evans and another officer informed Warfield he was being transferred to the Wisconsin Department of Corrections (WDOC). Id. ¶ 4. From May 19, 2023, to June 19, 2023, Warfield started a hunger strike to get transferred back to South Dakota. Id. ¶ 6. WDOC Nurse Practitioner Charles Dombeck stopped all of Warfield's medication that was ordered in South Dakota, which caused Warfield to have chest pain and swelling in his legs and feet. Id. ¶¶ 6, 11. Warfield claims that both while he was in Wisconsin and upon his return to South Dakota, he was denied access to his medical records to limit his healthcare. Id. ¶ 6. He alleges that "[a]pparently South Dakota wanted to deprive [him] the same health care [he] received . . . in South Dakota and records, to cause [him] pain, while [he] was in Wisconsin, to teach [him] a lesson about complaining about South Dakota DOC Staff

[5] Warfield alleges that Hofer was demoted from lieutenant to a regular officer because of the events on May 11, 2023. Doc. 36 ¶ 26.

and health care."[6] Id. (citation modified). While Warfield was in Wisconsin, Sergeant Dalass and other WDOC correctional officers also took Warfield's ADA watch, medically ordered arch supports, and TED hose. Id. ¶ 4.

On June 29, 2023, a WDOC sergeant informed Warfield he was being moved to a different cell to prepare for reintroduction back to South Dakota. Id. ¶ 7. Warfield asked why he could not stay in his current cell because of his anxiety with moving, but the sergeant informed Warfield that he could talk to Lieutenant Beck about that. Id. Later, Beck and Officer Katze came to Warfield's cell. Id. Katze put Warfield in handcuffs in an unusual way that caused pain and used pressure point techniques. Id. The WDOC sergeant attempted to intervene, but other officers would not let her. Id.

On one night sometime after Warfield's return from Wisconsin, Warfield asked Officer Allen about his medically ordered diabetic snack because staff had already delivered diabetic snacks to other inmates. Id. ¶ 12. Allen responded, "will send you back to Wisconsin." Id. On July 23, 2023, Warfield sent Jared Hettich correspondence about legal property that was missing or not delivered to Warfield. Id. ¶ 13. When Warfield later asked Hettich about his legal property, Hettich stated, "You do not like Wisconsin do you. You should think about that when you complain about staff." Id. (citation modified). Around July 24, 2023, Officer Austin Johns repeatedly said that "Warfield's going back to Wisconsin" to health services staff. Id. ¶ 11. On February 26, 2024, when Warfield asked Rodriquez a question related to a fact he wanted to include in his civil complaint, Rodriquez responded, "We will send you back to Wisconsin." Id. ¶ 16 (citation modified). In May or June 2024, when Warfield attempted to complain about the gastrointestinal diet trays, Rodriquez "c[a]me up with his mace can out [and] sa[id] cuff up"

[6] Warfield also indicates that one nurse in South Dakota was often harassed because she was kind to Warfield. Doc. 36 ¶¶ 2, 11.

before Warfield was taken to a holding cell. Id. ¶ 23. On September 16, 2024, Correctional Officer Wines threatened Warfield with transfer after Warfield filed his original complaint in this current case. Id. ¶ 22.

Warfield attempted in his criminal case to get a state court order about his legal property, but the assistant attorney general allegedly falsely told the judge that Warfield's access to discovery was restricted in his older criminal case. Id. ¶ 14. The assistant attorney general informed the state court judge by email that all Warfield had to do was request the discovery, but Warfield gave such a request to Sam Yost during a Zoom appearance in front of the state court judge. Id. Warfield also requested his legal property from Seth Hughes, who informed Warfield that he would get his legal property the following week, but Warfield had not received his legal property at the time of filing his Amended Complaint. Id. Warfield generally alleges that not only have Defendants not given him his legal property, but also his other property. Id. ¶¶ 5, 14.

In October 2023, Warfield sold 15,300 shares of Fannie Mae Stock. Id. ¶ 14. Defendants allegedly informed Compushare Trust Company—which contains his Fannie Mae Stock and other accounts—that Warfield was deceased to prevent him from accessing his accounts. Id. Warfield alleges that this was done to prevent him from hiring new counsel and an expert in his criminal case. Id. Warfield alleges that "defendant(s) and/or their staff attempted to hack into [his] current brokerage account, after [he] got back from Wisconsin, it appears that an email address was attempted to be put on that brokerage account, however, that brokerage account has multi factor protections authentications, in which prevented full access." Id. (citation modified). Warfield heard Hettich talking with other staff, and they said that "they wanted to bankrupt [Warfield] (ie prevent [him] the use of [his] funds) so [Warfield] could not hire any new

attorney(s) or experts or use those funds for other legal matters." Id. (citation modified). Defendants also deprived Warfield access to his 1099s to file his tax returns. Id.

Warfield also claims that Defendants "destroyed [his] typewriter to prevent [him] from drafting federal complaints, legal notes, exhausting administrative remedies grievances, letters to attorney(s) and courts – state or federal." Id. ¶ 23. Hettich informed Warfield, "We broke your typewriter when we were going through your legal property, it does not work anymore, we wrote an Information Report on it." Id. (citation modified). Warfield was called to the unit manager's office, where there were two boxes of his legal property and the typewriter. Id. When Warfield examined the typewriter, the clear visor fell completely off, and the security seals were cut. Id. The unit manager permitted Warfield to plug the typewriter in, but it did not turn on. Id. When Warfield requested that it be replaced because staff broke it, the unit manager demanded Warfield get out of his office. Id. Warfield was able to perform some repairs on the typewriter to get it to function, but it did still have some problems. Id.

On October 14, 2024, Wines allegedly assaulted Warfield, after Warfield attempted to complain about a meal he received earlier in the day. Id. ¶ 21. Lieutenant Deppe instructed Wines to throw Warfield to the ground, which caused Warfield to have a broken nose and glasses. Id. Deppe and other officers bent Warfield's arm while pulling them behind his back, and another officer twisted Warfield's leg. Id. On October 18, 2024, Ekeren came to Warfield's cell and informed him that Warfield was referred to restrictive housing for allegedly assaulting Wines. Id. Warfield advised Ekeren that he had not assaulted Wines and that policy required Warfield received "a disciplinary report, notice of charges and [a Disciplinary] hearing, before placement or referral to Restrictive Housing." Id. Ekeren allegedly stated, "they probably want to get you back into population quicker." Id.

On October 22, 2024, Warfield went to a classroom where Rodriquez, Hughes, and another SDSP staff member were sitting at a table; Hughes informed Warfield that he was referred for assaulting Wines. Id. Hughes informed Warfield of his right to make a statement but that they would not allow him to do so. Id. During the hearing, Hughes mentioned Warfield's assault history of an incident at the Mike Durfee State Prison—which Warfield said he was found not guilty—and the assault on Boysen—for which Warfield claims to have been held in restrictive housing for a year-and-a-half and which Warfield said the case was dismissed by the State. Id. Following the hearing, another staff member interviewed Warfield about the hearing and took photos of Warfield's injuries. Id. The next day, Warfield received notice that he was placed in restrictive housing, despite an associate warden indicating that Warfield should not be placed in Closed Custody.[7] Id. Warfield filed grievances about this issue and appealed up to Secretary of Corrections Wasko.[8] [9] Id. ¶ 24; see also Doc. 36-2 at 83–92. On November 6, 2024, Warfield spoke with Amber Pirraglia about the alleged assault from Wines, but Pirraglia did not want to answer some of the questions Warfield asked her. Doc. 36 ¶ 24.

Warfield sues all Defendants in their individual and official capacities. Id. at 1. He does not specifically identify what claims he alleges against which Defendants; he generally alleges that "[t]his lawsuit challenges the intentional unlawful and unconstitutional conduct of the defendant(s) in which deprived the Plaintiff and violated his First, Fourth, Sixth, Eighth and Fourteenth Amendment Rights under the United States Constitution (U.S. Constitution), but not

---

[7] Warfield alleges that this occurred one day after Teresa Bittinger resigned as warden. Doc. 36 ¶ 21.

[8] Warfield also indicated that he learned that Wasko worked for Correctional Health Partners, which he claims violated South Dakota law because she was "not to have any pecuniary interest in any contracts with the DOC or State of South Dakota, if she [was] employed by the State of South Dakota." Doc. 36 ¶ 21 (citation modified).

[9] Warfield alleges that Wasko, Pirraglia, and Hettich "directly partook in the unconstitutional conduct and/or caused it to occur through their failures to train and/or supervise their subordinates." Doc. 36 ¶ 28.

limited to such." Doc. 36 ¶ 1; see also id. ¶ 40 ("The defendant(s) intentional unlawful and unconstitutional actions and conduct deprives the Plaintiff the full benefits of his First, Fourth, Sixth, Eighth and Fourteenth Amendment Rights under the United States Constitution, but not limited to such.").

In the Relief Requested portion of Warfield's Amended Complaint, he asks the Court to "grant the following, but not limited to such:"

> (A) Declare unlawful and unconstitutional, the Defendant(s) actions and conduct against Plaintiff, mentioned-above, depriving, denying and impeding Plaintiff's U.S. Constitutional Rights;
> (B) Enjoin the defendant(s) from further violating Plaintiff's rights, along with requiring defendants to return Plaintiff's property;
> (C) Enjoin the Defendant(s) from retaliation, such as, but not limited to such, retaliatory transfer out-of-state, threats of retaliatory transfer out-of-state, retaliatory Restrictive Housing, and any type of retaliation;
> (D) Award damages to Plaintiff for deprived and denied Fannie Mae Account and Proceeds, requiring defendants to provide Plaintiff with 15,300 shares of Fannie Mae Stock or the current market value, by either depositing 15,300 shares of Fannie Mae Stock common stock in his Computershare Fannie Mae Account or his brokerage account or deposit the current market value of 15,3000 shares of Fannie Mae common stock at Service First Federal Credit Union or his brokerage account;
> (E) Invoke supplemental jurisdiction over any potential state law claims;
> (F) Award Plaintiff their reasonable fees, costs, and expenses, including attorneys fee, pursuant to 28 U.S.C. § 2412;
> (G) Award such additional relief, as the interest of justice may require.

Id. ¶ 44 (citation modified).

## II. Legal Standard

A court must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin

v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." 550 U.S. at 555 (internal citation and footnote omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 554-63)).

Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The Court will now screen Warfield's Amended Complaint under 28 U.S.C. § 1915A.

## III. Legal Analysis

### A. Mootness on Claims for Injunctive Relief

"[A]n inmate's claims for declaratory and injunctive relief are moot when he is transferred to another facility and is no longer subject to alleged unlawful conditions." Gladson

v. Iowa Dep't of Corr., 551 F.3d 825, 835 (8th Cir. 2009) (citing Pratt v. Corr. Corp. of Am., 267 F. App'x 482, 482 (8th Cir. 2008) (per curiam)); see also Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999) (citing Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985)).

Warfield has been transferred to a prison in Florida and is no longer confined in South Dakota or Wisconsin. Doc. 29; Doc. 53 at 4. Accordingly, Warfield's claims seeking injunctive relief to "[e]njoin the defendant(s) from further violating Plaintiff's rights" and to "[e]njoin the Defendant(s) from retaliation, such as, but not limited to such, retaliatory transfer out-of-state, threats of retaliatory transfer out-of-state, retaliatory Restrictive Housing, and any type of retaliation" and related claims for declaratory relief are denied as moot. Doc. 36 ¶ 44. See also Munt v. Schnell, No. 19-CV-1142 (NEB/ECW), 2020 WL 4382811, at *14 (D. Minn. July 31, 2020) ("Given that [plaintiff] has been transferred, and that there is no indication that a return to [the facility] is imminent, the Court believes that his demand not to be transferred from [the facility] is now moot."). Because the alleged deprivation of Warfield's property is ongoing because the property has not been returned, this Court does not find these claims to be moot.

### B. Standing on Claims for Money Damages

"[S]tanding is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." City of Clarkson Valley v. Mineta, 495 F.3d 567, 569 (8th Cir. 2007). Thus, standing can be raised by the parties or by the court sua sponte. Delorme v. United States, 354 F.3d 810, 815 (8th Cir. 2004). Standing is claim-specific, Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006) (citing Allen v. Wright, 468 U.S. 737, 752 (1984)), and "[a] party invoking federal jurisdiction has the burden of establishing standing 'for each type of relief sought,'" Missourians for Fiscal Accountability v. Klahr, 830 F.3d 789, 793 (8th Cir. 2016) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)).

"Standing requires (1) an injury in fact (2) fairly traceable to the defendant's actions and (3) likely to be redressed by a favorable decision." Curtis Lumber Co. v. La. Pac. Corp., 618 F.3d 762, 770 (8th Cir. 2010) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). "The redressability inquiry focuses on whether the *injury* that a plaintiff alleges is likely to be redressed through the litigation." Pharm. Rsch. & Mfrs. of Am. v. Williams, 64 F.4th 932, 940 (8th Cir. 2023) (citation modified). "In other words, the plaintiff must show that 'it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit.'" Id. (quoting Sprint Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 273–74 (2008)).

This Court finds issue with the redressability requirement on some of Warfield's claims. Warfield sues Defendants in their individual and official capacities. Doc. 36 at 1. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." Brown v. Montoya, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). In Warfield's Amended Complaint, he seeks money damages related to his due process claims for depriving his property of his shares of Fannie Mae stock. Doc. 36 ¶ 44. He requests the previously noted injunctive and declaratory relief and indicates that his request is "not limited to such" and asks the Court to "[a]ward such additional relief, as the interest of justice may require. Id. When considering redressability, in dicta, the Eighth Circuit has recognized that "a boilerplate request for 'such other and further relief as the Court deems just and proper' is insufficient to preserve a claim for nominal damages." Hawse v. Page, 7 F.4th 685, 691 n.8 (8th Cir. 2021) (quoting Foodbuy, LLC v. Gregory Packaging, Inc., 987 F.3d 102, 116 (4th Cir. 2021)); see also Frost v. Sioux City, 920 F.3d 1158, 1162 n.1 (8th Cir. 2019) ("We do not think that the boilerplate remedies language quoted about, broad and non-specific as it is, comports

with the constitutional requirement of redressability." (citation omitted)). This Court lacks standing over all of Warfield's individual capacity claims—except for his due process claims for Fannie Mae stock—against Defendants because a favorable decision for Warfield on all of these claims would not remedy his alleged injury because he has not sought money damages on those claims.

### C. Official Capacity Claims for Money Damages

Warfield sues all Defendants in their individual and official capacities as employees of the State of South Dakota or the State of Wisconsin. Doc. 36 at 1. Warfield requests money damages on his due process claims related to his Fannie Mae stock. Id. ¶ 44. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). "As such, it is no different than a suit against the State itself." Id. Although "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties . . . it does not provide a federal forum for litigants who seek a [monetary] remedy against a State for alleged deprivations of civil liberties." Id. at 66; see also Tornquist v. South Dakota, 4:23-CV-04195-LLP, 2024 WL 3967357, at *4–5 (D.S.D. Aug. 28, 2024) (applying Eleventh Amendment immunity to employees of the SDSP).

The Eleventh Amendment bars actions against a state for money damages unless the state has waived sovereign immunity. Will, 491 U.S. at 67. That said, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983" and thus subject to suit. Id. at 71 n.10 (citing Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)). Claims for money damages against defendants in their official capacities are the equivalent of claims for money damages against the state, and South Dakota and Wisconsin have not waived

their sovereign immunity. Thus, Warfield's claims against any state employee in their official capacity for money damages are dismissed without prejudice under 28 U.S.C. § 1915A(b)(2) based on Eleventh Amendment immunity.

### D. Due Process Claims

Warfield also claims that Defendants violated his Fourteenth Amendment right to due process by preventing him from concentrating his assets into a single account, "effectively depriving" him of proceeds from the sale of Fannie Mae stock, and confiscating/failing to return copies of his medical and legal records. See Doc. 1 ¶¶ 14–15. Under the Fourteenth Amendment, a "state [cannot] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. An intentional deprivation of property does not violate due process if there is an adequate post-deprivation remedy available. Hudson v. Palmer, 468 U.S. 517, 533, 536 (1984). But when "the property deprivation is effected pursuant to an established state procedure[,]" a post-deprivation state remedy does not satisfy due process. Id. at 534 (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)). South Dakota law provides Warfield an adequate post-deprivation remedy: SDCL § 21-3-3 recognizes a cause of action for wrongful conversion of personal property. Wisconsin also has a cause of action for conversion of or damage to personal property. See Wis. Stat. §§ 893.35 and 893.51. And Warfield does not allege that the deprivation of his property occurred "pursuant to an established state procedure" or regulation. See Palmer, 468 U.S. at 534; Weigel v. City of Flandreau, No. 4:23-CV-04184-ECS, 2026 WL 810819, at *10 (D.S.D. Mar. 24, 2026) ("If a loss resulted from an established state procedure—in contrast with a random or unauthorized act by an employee—then an adequate post-deprivation remedy does not satisfy due process." (citing Clark v. Kansas City Mo. Sch. Dist., 375 F.3d 698, 702 (8th Cir. 2004))). Instead, Warfield alleges that the

action taken by Defendants related to his Fannie Mae account was done in violation of South Dakota DOC policy. Doc. 36 ¶ 43. Because an adequate post-deprivation state-court remedy exists for Warfield's due process for deprivation of property claims, his Fourteenth Amendment due process deprivation of property claims are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1).

## IV. Request to Take Judicial Notice

In Warfield's Amended Complaint, he asks the Court to take judicial notice of both his state court cases and trial transcripts from his prior criminal case. Doc. 36 ¶¶ 2, 5. Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, under Rule 201, a court may take judicial notice of "an adjudicative fact only, not a legislative fact." Fed. R. Evid. 201(a). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). But judicial notice does not permit admission of evidence that is "in contravention of the relevancy, foundation, and hearsay rules." Am. Prairie Constr. Co. v. Hoich, 560 F.3d 780, 797 (8th Cir. 2009).

Here, it is not clear what particular fact Warfield is asking the Court to take judicial notice of, and Warfield has not supplied the Court with information necessary for the Court to take judicial notice. See generally Doc. 36. Accordingly, this Court denies Warfield's request for the Court to take judicial notice.

## V. Leave to Amend

This Court finds that the interests of justice would promote letting Warfield file an additional amended complaint that requests relief that the Court can grant on Warfield's individual capacity claims. Accordingly, Warfield has thirty days to file an amended complaint. Warfield must file his amended complaint on or before **September 14, 2026**. Failure to do so will result in the dismissal of his case for the reasons stated in this Opinion and Order.

But "an amended complaint supercedes an original complaint and renders the original complaint without legal effect." In re Atlas Van Lines, Inc., 209 F.3d at 1067. "[A]n amended complaint cannot merely add to the original complaint. An amended complaint must stand alone because it supersedes the original complaint." Christians v. Hanvey, No. 4:23-CV-04137-LLP, 2024 WL 4534686, at *3 (D.S.D. Oct. 17, 2024) (citing Thomas v. United Steelworkers Local 1938, 743 F.3d 1134, 1139 (8th Cir. 2014)). Warfield's amended complaint must comply with Local Rule 15.1, which requires that "any party moving to amend or supplement a pleading must attach a copy of the proposed amended pleading to its motion to amend with the proposed changes highlighted or underlined so that they may be easily identified." D.S.D. Civ. LR 15.1. "If the court grants the motion, the moving party must file a clean original of the amended or supplemental pleading within 7 days." Id.

Because this is the second chance Warfield is getting to remedy the shortcomings of his pleadings, this Court cautions Warfield that it is unlikely this Court will again provide leave to amend absent a showing of good cause. See Horras v. Am. Cap. Strategies, Ltd., 729 F.3d 798, 804 (8th Cir. 2013) (finding "repeated failure to cure deficiencies by amendments previously allowed" as a reason to deny leave to amend).

## VI. Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint

Because this Court has dismissed all claims against all Defendants for lack of subject matter jurisdiction or failure to state a claim on screening, this Court denies as moot Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, Doc. 37.

## VII. Defendants' Motion to Stay Discovery Pending Resolution of Qualified Immunity

SD Defendants move "for an Order staying discovery until the question of the applicability of the doctrine of qualified immunity is resolved by this Court." Doc. 43. Because currently, all claims against all Defendants have been dismissed, requests for discovery related to this lawsuit are moot. Exec. Air Taxi Corp. v. City of Bismarck, 518 F.3d 562, 569 (8th Cir. 2008). Accordingly, this Court does not find it appropriate to stay discovery. If Warfield files a new amended complaint as permitted above, Warfield may serve discovery requests as allowed under the Federal Rules of Civil Procedure. Should that occur, this Court would consider a motion to stay discovery at that time, if Defendants file a motion. Accordingly, Defendants' Motion to Stay Discovery Pending Resolution of Qualified Immunity, Doc. 43, is denied as moot.

## VIII. Plaintiff's Motion for Court to Issue Order(s)

In Warfield's Motion for Court to Issue Order(s), he requests that the Court issue several different orders providing several different forms of relief. Doc. 50. This Court will address each request separately.

### A. Motion for Copies

Warfield asks that this Court order "the Clerk(s) or their designee(s) of this Court, to provide [him] filed copies of [his] pleadings." Doc. 50 at 1. He argues that this would be helpful because it is difficult for him to get copies at his current facility, it will allow him to know

whether this Court received his documents, and it will serve as an Americans with Disabilities Act accommodation for his cognitive impairment. Id. This Court's fee schedule imposes a cost per page for copies. Fee Schedule, U.S. Dist. Ct. Dist. of S.D. (Dec. 1, 2023), https://www.sdd.uscourts.gov/2017fees. Warfield is not entitled to free copies. See Jackson-Mackay v. Cotant, No. 8:22CV10, 2022 WL 1249731, at *3 (D. Neb. Apr. 27, 2022) (collecting cases supporting that a plaintiff is not entitled to free copies even if he were proceeding in forma pauperis). Further, the Information and Instructions for Prisoner Filing Civil Rights Complaint in the United States District Court District of South Dakota informs the prisoner plaintiffs that

> Because of the large volume of cases filed by prisoners in this court and limited court resources, the court and clerk's office will not answer inquiries concerning the status of your case or provide copies of documents, except at a charge of fifty cents ($0.50) per page. You must therefore keep copies of all documents submitted to the court for your own records.

Information and Instructions for Prisoner Filing Civil Rights Complaint in the United States District Court District of South Dakota, U.S. Dist. Ct. Dist. of S.D., https://www.sdd.uscourts.gov/sites/sdd/files/forms/Combined%201983%20Forms%20for%20quick%20printing%20%28forms%201-4%29_0.pdf (last visited Aug. 7, 2026). Thus, Warfield's request for free copies of all pleadings that he has filed or will file is denied. If Warfield does need copies of specific filings, he may file a request with the Clerk's Office and tender the amount required for copies.

### B. Motion for Electronic Notice

Warfield requests that this Court enter an order requiring "the Clerk(s) or designee(s) of this Court, to provide the defendant(s) attorney(s) electronic notice of [his] filings." Doc. 50 at 1. Notice through CM/ECF is provided when consistent with this Court's Local Rules or the Federal Rules of Civil Procedure. This Court will not enter a blanket order requiring the Clerk's Office to provide notice through CM/ECF to all Defendants in all scenarios or determining that

notice through CM/ECF is always proper or sufficient. Thus, Warfield's Motion for Electronic Notice is denied.

**C. Motion for Defendants' Counsel to File Mail Report**

Warfield requests that this Court "require the defendant(s) attorney to report and file with the Court, whether any legal mail, from them, to [] (Warfield) was returned to them by FDOC, if so, when and what documents." Doc. 50 at 2. Counsel for served Defendants appears to have so far kept the Court informed of mailings for Warfield that were returned to him from the Florida State Prison. See, e.g, Docs. 45, 47, 48, 49. This Court does not see any need to impose any further requirements beyond what is already required based on the Federal Rules of Civil Procedure and this Court's Local Rules. Thus, Warfield's request is denied.

Warfield also asks this Court to "[r]equire the defendant(s) and contractor – FDOC, to provide [i]ncoming and outgoing legal mail logs, regarding, Kelly Warfield." Doc. 50 at 4. This Court reads Warfield's request for mail logs of all incoming and outgoing legal mail logs to go beyond the requirements for certificates of service as required under the Federal Rules of Civil Procedure and this Court's Local Rules, and instead as a request for preliminary injunctive relief.

Whether a court should issue preliminary injunctive relief "involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109,113 (8th Cir. 1981) (en banc). Warfield has not shown that any of these factors favor interfering with prison administration. See generally Doc. 50. He certainly has not shown that he is likely to succeed on the merits because all of his claims against all Defendants

are dismissed. Accordingly, this Court denies Warfield's request to require Defendants to provide incoming and outgoing mail logs.

### D. Motion to Require Defendants to File Discovery Letter and Compel Discovery

Warfield requests that this Court "require the defendants to file [a] Discovery Letter" and "[o]rder the defendant(s) to comply with [his] Discovery Request pursuant to Rule 37, as it appears the defendant(s) are refusing to comply and provide Warfield with no justification for refusal." Doc. 50 at 2. As this Court previously explained, Warfield's request for discovery is moot because all his claims have been dismissed. See supra at 17. Accordingly, this Court does not order Defendants to comply with his discovery request. Further, because discovery requests are no longer pending, this Court does not see any reason to require Defendants to file a copy of Warfield's discovery request.

### E. Request to Require Defendants Pay Costs and Fees for Serving Unserved Defendants

Warfield requests that this Court order Defendants to pay the costs and fees for serving the unserved Defendants. Doc. 50 at 3. But unless Warfield files an amended complaint, there are no claims pending against the unserved Defendants or any Defendant. Accordingly, Warfield's request to require Defendants pay costs and fees for serving unserved Defendants is denied at this time.

## IX. Motion to Reconsider Temporary Restraining Order

Warfield moves for reconsideration of this Court's Order Denying Plaintiff's Motion to Amend Pleadings (Doc. 54). Doc. 55. Although the Federal Rules of Civil Procedure do not address motions for reconsideration, "reconsideration of an interlocutory order may . . . be brought under Rule 54(b)." Colombe v. United States, No. 5:24-CV-05069-ECS, 2025 WL

3063285, at *3 (D.S.D. Nov. 3, 2025) (citing Julianello v. K-V Pharm. Co., 791 F.3d 915, 923 n.3 (8th Cir. 2015)). "[T]he Court will grant a Rule 54(b) motion to reconsider if the movant convinces the Court that it made a mistake of law or a clearly erroneous finding of fact in its previous order." Id.

Warfield argues that "[t]his Court should not have denied these motions [ ]Doc. #21, 22, 42, 42-1, 42-2, as Warfield is still subject to the conditions that are violating his constitutional rights. Defendants still depriving Warfield his property, his legal property and legal supplies." Doc. 55 ¶ 3. Warfield argues that he is still subject to conditions that violate his constitutional rights by Defendants. Id. Defendants argue Warfield is not entitled to relief pursuant to Rule 60(b), Doc. 58, but as the court noted in Colombe, analyzing a motion to reconsider an interlocutory order as a Rule 54(b) motion is proper. 2025 WL 3063285, at *3. Accordingly, this Court applies Rule 54(b). Although Warfield generally alleges that this Court erred in denying his prior motion and includes a plethora of facts in his filing, the facts he identifies do not provide any legitimate basis for this Court to alter its prior ruling. See generally Doc. 55. Even if this Court did have a reason to vacate its prior order denying Warfield's motion for a temporary restraining order—which it does not—this Court would no longer have jurisdiction to grant a temporary restraining order because all of Warfield's claims for injunctive relief are moot or dismissed. See supra at 10–11, 14–15.

## X. Motion for Copies and Electronic Service

Warfield requests that this Court enter an order "to allow this Court's Clerk Office and their staff ability to provide Warfield copies of all his filings, due to impediments, restrictions here, as well as for ADA Accommodation." Doc. 60 at 1. He also asks that this Court "have [the] clerk electronically serve defendants Warfield's filings once filed." Id. at 3. Warfield's

motion is denied for the reasons this Court denied his other motion for copies and motion for electronic notice. See supra at 17–19. Thus, Warfield's Motion for the U.S. District Court's Clerk's Office to Provide Plaintiff Warfield Copies of All His Filings and Electronically Serve the Defendants Warfield's Filings Once Filed, Doc. 60, is denied.

## XI. Motion to Compel Discovery

Warfield moves to compel discovery, requesting Defendants provide copies of many different documents and videos. Doc. 61. Defendants argue that discovery should be stayed pending resolution of qualified immunity. Doc. 64. But because all claims against all Defendants have been dismissed at screening, the Court denied Defendants' motion to stay discovery and found that current discovery requests are moot. See supra at 17. Accordingly, Warfield's Motion to Compel Discovery, Doc. 61, is denied as moot. As the Court previously noted, it would consider whether a stay of discovery is appropriate if Defendants so move and Warfield files a new amended complaint and serves discovery requests.[10]

## XII. Conclusion

Accordingly, it is

ORDERED that Warfield's claims against all Defendants are dismissed without prejudice under 28 U.S.C. § 1915A(b)(1). It is further

ORDERED that Warfield's failure to file an amended complaint by **September 14, 2026**, will result in the dismissal without prejudice of his claims. It is further

ORDERED that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, Doc. 37, is denied as moot. It is further

[10] This Court is aware that Warfield submitted several filings and motions on August 7, 2026. Docs. 65–70. This Court will rule on these motions after the time for filing a responsive brief pursuant to D.S.D. Civ. LR 7.1 or the time for Warfield to file an amended complaint expires.

ORDERED that Defendants' Motion to Stay Discovery Pending Resolution of Qualified Immunity, Doc. 43, is denied as moot. It is further

ORDERED that Warfield's Motion for Court to Issue Order(s), Doc. 50, is denied. It is further

ORDERED that Warfield's Motion to Reconsider Temporary Restraining Order, Doc. 55, is denied. It is further

ORDERED that Warfield's Motion for the U.S. District Court's Clerk's Office to Provide Plaintiff Warfield Copies of All His Filings and Electronically Serve the Defendants Warfield's Filings Once Filed, Doc. 60, is denied. It is finally

ORDERED that Warfield's Motion to Compel Discovery, Doc. 61, is denied as moot.

DATED this 14 day of August, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE